KaplaN, Mitchell H., J.
This case arises out of a dispute between plaintiff Gerfman Global, LLC (Gerf-man), which owns the Parking Garage Units (Garage Unit) of the Nautica Leasehold Condominium (Nautica), and the defendant Trustees of the Nautica Leasehold Condominium Trust (the Trustees and the Trust, respectively). Nautica is a mixed use condominium located in Charlestown, Massachusetts; it consists of 117 residential units and a parking garage. The upper level of the garage has 188 parking spaces for use of the residences, while the lower level consists of commercial spaces. The lower level is owned by Gerfman. The Master Deed establishing the condominium was executed in 2001. It divides the common elements into two categories: the Condominium Common Elements (CCE), which relate to all of the units, and the Residential Common Elements (RCE), which relate only to the Residential Units. The By-laws of the Trust, which are set out in the Nautica Declaration of Trust, similarly divide expenses into CCE expenses, which are to be assessed against all unit owners, and RCE expenses, to be assessed only against the residential unit owners. Gerfman filed this action seeking a declaration that (1) the Trustees cannot retroactively reallocate expenses that the Trustees had previously allocated to the RCE for a number of years to the CCE and then retroactively assess Gerfman for its proportionate share of those reallocated expenses, and (2) the allocation of expenses between the CCE and RCE that the Trustees imposed prospectively beginning in 2013 violate the terms of the Declaration of Trust. Gerfman also complains that the Trustees failed to follow the procedural notice and meeting rules set out in the By-laws when they voted for the reallocation of expenses and retroactive assessments. The Trustees, in turn, filed counterclaims against Gerfman seeking (i) a declaration that their reallocation and retroactive assessments are valid, as are their current allocation of expenses and consequent assessments; (ii) judgment against Gerfman for all current and past assessments as recalculated by the Trustees, plus attorneys fees and costs incurred in collecting these amounts, as provided by G.L.c. 183, §6; (iii) the establishment of a lien on the Garage Unit pursuant to that statute; and (iv) an order authorizing the sale of the Garage Unit to satisfy that lien.
The case is now before the court on the Trustees’ motion for summary judgment in which they seek to establish Gerfman’s liability to them for current and retrospective common area assessments, the amount of that liability to be determined in a subsequent hearing for assessment of damages. For the reasons that follow, the Trustee’s motion is ALLOWED, in part, and DENIED, in part.
FURTHER FACTS
The following additional material and relevant facts are undisputed.
Under the Master Deed, the residential units are assigned 82.033% of the common areas of Nautica and the Garage Unit, 17.967%. Nautica’s developer sold all of the residential units after establishing the condominium, but retained title to the Garage Unit, which it operated as a commercial garage. Shortly after the Trust was established, it entered into a property management contract with a firm called Peabody Properties, Inc. (Peabody). Peabody was affiliated with the developer. Apparently, Peabody’s duties included allocating expenses to the CCE and RCE accounts. The only expense that it allocated to the CCE was the cost of Nautica’s hazard insurance policy; all other condominium common expenses were allocated to the RCE.[1] In December 2006, the developer sold the Garage Unit to Gerfman. In 2008, Hodan Property Management and Development, Inc. (Hodan), a firm unaffiliated with the developer, replaced Peabody as Nautica’s property manager. Hodan continued Peabody’s practice of only allocating the hazard insurance costs to the CCE expenses until January 2013.
In 2008, the Trustees filed suit on behalf of the Trust against the developer and certain other defendants to recover damages caused by alleged construction defects. The Trustees allocated all of the litigation expenses associated with that suit to the RCE. In consequence, Gerfman was not assessed and did not contribute to litigation-related expenses. The litigation was settled in 2010; pursuant to that settlement Nautica received approximately $1.8 million. Some of *342 the settlement was used to refund prior litigation assessments made to the residential unit owners and some of it used to fund repairs to Náutica. The summary judgment record suggests that some of the repairs funded by the settlement benefited the Garage Unit; although the extent to which that may have occurred is not established.
In January 2013, Hodan, acting on behalf of the Trustees, began to allocate a number of condominium expenses previously allocated only to the RCE account to the CCE account with the result that Gerfman would begin to pay its aliquot share of those expenses, in addition to the hazard insurance premiums. In February 2013, Hodan sent Gerfman a letter explaining that it had retroactively reallocated several items previously allocated as RCE expenses such that they were now CCE expenses and was retroactively assessing Gerfman for the amounts that Gerfman allegedly should have been assessed for the years 2007 through 2012, according to its revised apportionment of these categories of expenses between the RCE and CCE accounts. On behalf of the Trustees, Hodan demanded that Gerfman pay in excess of $600,000 based on this retroactive assessment.
Since February 2013, Hoban, on behalf of the Trustees, continued on a current basis to allocate Nautica’s expenses using this same methodology and, therefore, to make current assessments to Gerfman based on that expense allocation. Since 2013, Gerf-man has refused to pay those assessments.[2]
DISCUSSION
This is not a case in which there is any dispute as to any relevant, material fact. The question of whether the Trustees can retroactively reallocate expenses and assess Gerfman for condominium expenses incurred in years prior to 2013 presents only an issue of law. With respect to current assessments made pursuant to the new methodology for allocating expenses between RCE and CCE employed from 2013 to the present, Gerfman did not pay its assessments and therefore, as a matter of law, cannot challenge them.
Retroactive Assessment
Neither party, each represented by attorneys who are exceptionally knowledgeable in condominium law, has directed the court to a decision addressing retroactive assessment of condominium charges, nor has the court found one. This appears to be an issue of first impression.
The court notes that the condominium documents treat assessment of condominium operating expenses as a forward looking exercise. Section 5.4 of the Declaration of Trust is entitled “Common Expenses, Profits, and Funds.” Subsection 5.4(b) provides as follows:
At least thirty days prior to the commencement of each fiscal year of this Trust, . . . the Board of Trustees shall estimate the common expenses expected to be incurred during such fiscal year, together with a reasonable provision for contingencies and reserves to be included in the reserve funds, and after taking into account any undistributed common profits from prior years, shall determine the assessments to be made for such fiscal year on account of common expenses. Such estimates shall be done separately for the (i) expenses related to the CCE and expenses identified herein or in the master Deed as CCE, (ii) expenses related to the RCE and expenses identified herein or in the Master Deed as RCE . . . The Trustees shall promptly render statements to the Unit Owners for their respective shares of such statements which shall unless otherwise determined by the Trustees as provided herein, be due and payable within thirty days after the same are rendered.
There is also a provision in Section 5.4 that explains how the Trustees are to deal with any underestimate of condominium expenses for the coming fiscal year. It works prospectively as well:
In the event that the Board of Trustees shall determine during any fiscal year that any assessment so made is less than the common expenses actually incurred or in the reasonable opinion of the Trustees likely to be incurred, the Board of Trustees shall make a supplemental assessment or assessments and render statements therefore in the manner aforesaid, and such statements shall be payable and shall take effect as aforesaid.
The Declaration of Trust, thus, directs the Trustees to estimate expenses and assess unit owners their proportionate share of these expenses in a forward looking manner based on a budget for the coming year. If the Trustees find that their estimates were understated, they again address the matter by making an additional current assessment, having in mind anticipated fixture unmet expenses. The Declaration of Trust has no provisions that suggest that expenses may be reapportioned retrospectively based on reconsideration of prior decisions made by the Trustees.
Similarly, G.L.c. 183A, §6(a)(i) states that:
Common expense assessments must be made at least annually, based on a budget adopted at least annually, in accordance with the master deed, trust, or by-laws.
In consequence, by requiring assessments to be based on a budget, which is by definition a forward looking document, the statutory scheme appears also to envision a prospective process of determining anticipated expenses and apportioning them to unit owners in conformity with the Declaration of Trust and Master Deed.
In this case, in 2013 the Trustees concluded that the apportionment of Nautica’s expenses between those placed in the CCE bucket and those place in the RCE bucket should be reconsidered back to the date that Gerfman purchased the Garage Unit. There is *343 certainly nothing in the organic documents that established the condominium, nor in any statute, that states or even implies that having used a different method of allocation in the past, the Trustees are bound to that methodology in the future. There may be a range of decisions that are permissible under the governing documents. There, however, appears to be nothing in these documents or G.L.c. 183A, §6, that even suggests that the budgets for the previous six years can be redone, because the current group of Trustees believes that previous Trustees made a mistake. Indeed, the Trustees’ only argument in favor of retroactive reassessment seems to be that there is nothing in the Declaration of Trust or Master Deed that prohibits it. In this court’s view, the absence of any prohibition is inadequate to permit the retroactive assessment of over $600,000 of expenses, when the condominium documents and statute clearly envision the budgeting and expense allocation process to be prospective.
The court notes that it is not deciding more than is before it in this case. For many years the Trustees assigned only the cost of hazard insurance to the CCE account. That was not an inadvertent error, it was a conscious decision. The fact that the Trustees could have included other expenses in the CCE bucket does not permit rebudgeting and reassessment retroactively of several hundreds of thousands of dollars. This does not mean that Trust By-laws could not have permitted reconsideration of assessments in subsequent years under identified circumstances, but such rights clearly should be spelled out in the organic documents so that purchasers of condominium units are aware of that possibility. This case also does not address a situation in which a simple mathematical error is made concerning the percentage of the common area expense a unit owner is assessed, if it is found in a reasonable time. The court decides only that on the facts presented by this case, the Trustees cannot engage in retroactive reapportionment of expenses and then make retroactive assessments based on the reallocation.[3]
Assessments from 2013 Forward
As noted above, the fact that Trustees only placed insurance expense in the CCE bucket until 2013, does not prevent the Trustees from reconsidering the proper allocation of Nautica’s expenses between CCE and RCE on a prospective basis. The Trustees’ new allocation methodology is not immune from review. The Board of Trustees is controlled by the residential unit owners. Section 3.1(a) of the Declaration of Trust provides that the Board shall consist of not less than three nor more than five members as determined by a vote of unit owners holding 67% of the beneficial interests,[4] but at least one of whom shall be a representative of the Garage Unit. Thus, it will normally be the case that a majority of the Trustees will be residential unit owners. A Board controlled by residential unit owners will have a self-interest in allocating expenses to the CCE account where just under one-fifth of those expenses will be paid by the Garage Unit. The Garage Unit is entitled to challenge those expense allocations to the extent it can prove that they were not apportioned fairly in accordance with the Declaration of Trust and the Master Deed.
However, in Blood v. Edgar’s, Inc., 36 Mass.App.Ct. 402, 405 (1994), the Appeals Court clearly stated that: “absent a prior judicial determination of illegality, a unit owner must pay its share of the assessed common expenses. Self-help remedies, such as withholding condominium common expense assessments, are not available. We add that a unit owner is not without remedy or recourse to challenge the propriety of common expense assessments. We suggest that aggrieved unit owners should timely pay—under protest—the common expense assessment. Thereafter, a judicial determination of the legality of the assessment, and suitable reimbursement, maybe sought.” In this case, Gerfman did not pay the prospective assessments that began in 2013 and, therefore, may not contest their legality in this action.[5]
ORDER
For the foregoing reasons, the Trustees’ motion for summary judgment is DENIED to the extent that it seeks declaratory relief or monetary damages with respect to retrospective reassessments against Gerf-man for the years 2007 through 2012. The motion is ALLOWED to the extent it asserts that Gerfman is liable for unpaid current assessments for common expenses for the years 2013 forward. The amount of such unpaid assessments to be determined in further proceedings.

 Section 5.5 of the Declaration of Trust states: 'The cost of all such insurance obtained and maintained by the Trustees pursuant to provisions of this Section 5.5 shall be a Condominium Common Expense, except that the owners of the Parking Garage Units shall not be required to contribute to the cost of commercial general liability insurance for the Residential Common Elements.” Nothing in the Declaration of Trust suggests that this is the only CCE expense.

 In its opposition, Gerfman devotes substantial space to arguments that the Trustees excluded Gerfman’s representative to the Board of Trustees from meetings and votes in which the retroactive and prospective allocation of expenses and corresponding assessments were discussed and voted upon. It appears that the Trustees did not always follow the By-laws when calling meetings and voting on these matters. However, as a majority of the Tmstees may vote either at a meeting or without a meeting by instmment signed by such a majority, even if votes were not taken at a duly noticed meeting, the Board’s votes and acts could still be ratified by written vote. Since Gerfman was only entitled to one Trustee on Nautica’s Board of Trustees, that vote would now be and would have at all times been adverse to Gerfman and to the benefit of the residential unit owners who, not surprisingly, all favored increasing Gerfman’s share of CCE expenses both retrospectively and prospectively. The Trustees’ actions could still be ratified today. In consequence, the court sees no practical benefit in addressing this issue; except to say that it is not proper to call a meeting without providing notice to Gerfman’s representative on the Board or exclude him from *344 a vote, although asking him to step out of a meeting while the Trustees discuss taking action adverse to Gerfman’s interests is certainly appropriate. In any event, Gerfman suffered no material prejudice from not receiving notice or being present at any vote of the Trustees.

 As the court mentioned at oral argument, if the proceeds of the settlement with the developer were used to make repairs to the Garage Unit, it may be that a claim for unjust enrichment might lie against Gerfman, as it did not contribute toward the cost of that litigation. The Trustees have not asserted an equitable clam in this case, but rather included a portion of the legal fees in the expenses reallocated to the CCE for the years in which they were incurred.

 The Garage Unit holds less than 20% of the interests.

 After oral argument on this motion for summary judgment, the court received a letter from Gerfman’s counsel in which he stated that the assessments for the period 2013 forward were recently paid. That “fact” is not part of the summary judgment record and cannot affect this decision. The court, however, notes that the court’s ruling on the pending motion will not result in final j udgment, and Gerfman could move to amend its complaint to allege the precondition necessary to state a claim challenging the assessment.